IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.        16-CV-00447-PAB-KLM

EDWARD JOHN NOSEWICZ

Plaintiff,

v.

JEFFREY JANOSKO,

Defendant.

---

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S
NON-RETAINED EXPERT DISCLOSURES**

---

Jeffrey Janosko ("Janosko"), by and through Nathan Dumm & Mayer P.C., hereby

submits the following Motion to Strike and provides supporting authority as follows:

## CONFERRAL

Counsel conferred on this matter via letters and then again briefly in person prior to

contacting the Magistrate to determine if a telephone hearing should be held.  [Ex. A, Letters].

Plaintiff opposes the relief requested.  This Motion is being filed pursuant to ECF 35.

## INTRODUCTION

In the simplest form, Plaintiff Ed Nosewicz's ("Nosewicz") inappropriately and in

violation of the applicable rules and case law, has disclosed multiple non-retained physicians to

offer retained expert opinions. [Ex. B, Expert Disclosures]. Nosewicz disclosed four treating

physicians as non-retained expert witnesses, each purportedly providing opinions regarding

Nosewicz and actions at the Adams County Detention Facility ("ACDF").  The problems with

Nosewicz's disclosures are numerous.  First, upon review of the medical records, none of the

four disclosed physicians ever provide opinions as alleged in the expert disclosure; and indeed, at least one physician, Dr. Rohilla, completely discards such alleged opinions in his own medical records.  As such, Nosewicz has failed to identify the bases for each of the opinions listed in his expert disclosures, a flaw he cannot remedy given the doctors' divergent opinions.   Second, each of the four non-retained disclosures includes opinions that are outside the scope permitted for a treating physician, triggering the more stringent disclosure obligations under Fed. R. Civ. P. 26(a)(2)(B), which Nosewicz failed to comply with when making his disclosures.  Most notably, each doctor provides an opinion as to the cause of Nosewicz's alleged injury, which is speculative, not necessary to treatment, and impermissible under Fed. R. Civ. P. 26(a)(2)(C). Third, Nosewicz's disclosures are in contravention of the Scheduling Order entered in this case, as he has disclosed in total twice the number of experts permitted, all without leave of court or any reasonable basis for doing so.  Each of these reasons in and of themselves provides a reasonable basis to strike the disclosure, and in combination certainly support such action. Further, there is no way for Nosewicz to cure his utter disregard for the rules and law and the prejudice caused thereby.  As a result, as set forth below, Janosko seeks that each of the four non-retained medical experts be struck.

**STANDARD OF REVIEW**

A motion for sanctions for a party's abuse of discovery is a matter within the sound discretion of the trial court. ***Hermann v. Hartford Cas. Ins. Co.***, 2011 WL 5569769, at \*2 (D. Colo. Nov. 15, 2012).  A party that fails to comply with Rule 26(a) or (e) is not permitted to introduce that witness at any subsequent hearing or at trial unless the failure was substantially justified or harmless. ***Id***. at \*1; Fed. R. Civ. P. 37(c).

Under Rule 26, a non-retained expert disclosure must include a summary of the expert's opinions and bases thereof.  Fed. R. Civ. P. 26(a)(2)(C); *see, e.g., Silver v. Shapiro*, 2011 WL 1321798, at \*3 (D. Colo. April 5, 2011).  In the context of a non-retained treating physician, the disclosure must be limited to the physician's personal knowledge of treatment of the patient, as set forth in the physician's medical records.  Any opinion provided beyond the specific course of treatment, as discussed in the medical records, such as causation, future prognosis, or consideration of outside sources, triggers the more stringent disclosure obligations under Fed. R. Civ. P. 26(a)(2)(B).  *See Dedmon v. Cont'l Airlines, Inc.*, 2015 WL 1040521, at \*5 (D. Colo. March 6, 2015); *see also Carbaugh v. Home Depot U.S.A., Inc.*, 2014 WL 3543714, at \*4 (D. Colo. July 16, 2014).  Non-compliance with the standards set forth in Rule 26 may result in exclusion of expert's testimony at trial. *See id*. at \*7.

## LEGAL ARGUMENT

### A.    The non-retained expert disclosures fail to identify the "bases" of their opinions

None of the alleged opinions set forth in Nosewicz's disclosures match the respective physicians' own medical records.  Indeed, some of the disclosed expert opinions are flatly contrary to what each respective doctor stated in their own medical reports.  In support of Nosewicz's expert disclosures, each non-retained expert disclosure has a catch-all phrase stating that the physicians will testify "consistent with the medical records and reports generated in this case." [Ex. B, p. 1].  That language, by its own wording, limits the physicians to only testify about matters identified in their medical records.[1]  However, then Nosewicz takes the disclosure

---

[1] While referring to a physician's medical records is appropriate under the Rule, a proper non-retained expert disclosure should also have identified specifics from the records so as to meet the

a leap further and provides a number of other opinions for each physician.  As to those

enumerated opinions, none of the medical records match the opinions disclosed, and thus

Plaintiff has failed to identify, as required, "the bases" of their opinions in violation of Fed. R.

Civ. P. 26(a)(2)(C); *see, e.g., Silver*, 2011 WL 1321798, at \*3 (holding that non-retained expert

disclosures must properly summarize facts and opinions of each witness).  As to some specific

examples associated with each expert, we note the following:

(a) Dr. Mark Engelstad

Subcategories (b) through (d) of Dr. Engelstad's disclosure all state that he will provide

an opinion that Nosewicz's various preexisting conditions, including OCD, anxiety, PTSD and

heart-related injury, were all the direct result of his encounter with Janosko at ACDF.  However,

a review of Dr. Engelstad's reports for the twelve months following Nosewicz's encounter at

ACDF reveals no mention of Janosko, or even a reference to Nosewicz being in jail.[2]  Dr.

Engelstad never states in his medical records that Nosewicz's symptoms, for which he was

diagnosed and being treated for an extended time prior to his time in jail, are related to a physical

encounter.  Relatedly, Dr. Engelstad's records reveal no opinion that Plaintiff "will continue, for

an indefinite period of time, to have increased anxiety and emotional stress and to re-experience

the traumatic incident" as stated in sub-paragraph (e).  Because Dr. Engelstad never discusses the

---

requirements of Rule 26.  *See A.R. by Pacetti v. Corp. of President of Church of Jesus Christ of LDS*, 2013 WL 5462277, at \*3-4 (considering impropriety of perfunctory disclosures of non-retained experts).  Nosewicz failed to do such for all of the physicians referenced herein.

[2] Undersigned counsel represents to the Court that she has reviewed an entire year's worth of records from Dr. Engelstad.  There is no mention of Deputy Janosko, ACDF, or a related causal opinion as to Nosewicz's various conditions.  In order to avoid burdening the Court with voluminous records, only four months of records following the incident are attached as an exhibit.  [Ex. C, Engelstad Medical Records]. To the extent the Court would like to review additional months, the undersigned would be happy to submit additional records upon request.

"traumatic incident" anywhere in his records, he naturally never provided an opinion that such an incident caused anxiety and stress or that it would continue to do so in the future.

In light of the fact that Dr. Engelstad's reports reveal no mention of Janosko, ACDF, or the "traumatic incident," subparagraphs (b) through (e) of his disclosure should be struck.

(b) Dr. Arif Rohilla

Dr. Rohilla's run-on disclosure indicates he will opine that Nosewicz had a small heart attack that was consistent with the chest pain while in jail and that an alleged lack of oxygen while in the jail could have contributed to a small heart attack.  He is also disclosed to opine that the chest pain or myocardial infarction could have been caused by circumstances related to a physical assault.  Lastly, and most incredulously, Dr. Rohilla will allegedly provide an opinion that if Nosewicz "believed that his heart attack was worsening, such belief on his part would also have been reasonable under all the attending circumstances.…"  His disclosure then goes one step further to provide an opinion that "when a person is being physically assaulted, the trauma of the assault causes his heart rate and blood pressure to increase…."  As with Dr. Engelstad, however, Dr. Rohilla never reached any of those conclusions in any of the disclosed medical records upon which his opinions are limited to.[3]

While Dr. Rohilla did note in his records that Nosewicz complained about an assault in the jail, he never stated that a lack of oxygen contributed to Nosewicz' chest pain, nor did he ever opine that the chest pain and/or any alleged heart attack was caused by a physical assault. [Ex. D, Rohilla Medical Records].  Indeed, when describing Nosewicz's alleged encounter, Dr.

---

[3] Defendant recognizes that Dr. Rohilla's disclosure also provides a lengthy exposé of the treatment Mr. Nosewicz experienced at the hospital.  However, that exposé is tethered solely to opinions that are objectionable under Rule 26; thus, his disclosure must be struck in its entirety.

Rohilla stated "[d]etails of all this are not very clear to me."  [Ex. D, p. 1].  Dr. Rohilla's actual opinion as to chest pain is on page 3 of the medical records where he states that:

> "Chest Pain. Some of this could be from his acute coronary syndrome. His troponins were slightly elevated, but they have already peaked. He is also tender in the chest while he was experiencing the pain. *He has history of lots of aches and pains in his body for about 8 or 9 years*. He is addicted to narcotics for that.

[Ex. D, p. 3 (emphasis added)].  A plain review of the applicable record reveals no mention of Janosko or the encounter playing a role in any heart attack or any other injuries asserted by Nosewicz and, in fact, references other possible causes.  As such, Dr. Rohilla's disclosure should be struck in its entirety.

(c) Dr. Martin Yussman

Dr. Yussman is disclosed to provide an opinion that if Nosewicz felt he was having a heart attack in ACDF, "such belief on his part would have been reasonable.…"  He will also allegedly provide an opinion that if Nosewicz were physically assaulted, his belief as to worsening chest pain "would also have been reasonable under the attending circumstances." [Ex. B, sections b and c of disclosure].  As is becoming a pattern, Dr. Yussman never provided such opinions in any of his provided medical records.

Dr. Yussman saw Nosewicz in August of 2016, nineteen months after his encounter with Janosko.  Dr. Yussman first remarked that Nosewicz "has not been seen in this office for several years."  [Ex. E, Yussman Medical Records].  There are no medical records indicating Nosewicz saw Dr. Yussman shortly after the encounter with Janosko.  The nineteen month gap from the date of the incident to Dr. Yussman's examination should by itself raise suspicion about the opinions set forth in his disclosure.  If the temporal gap is not enough, a review of Dr. Yussman's records definitively shows that he never reached the opinions disclosed by Nosewicz.

While Dr. Yussman did recount Nosewicz's story of allegedly being "beat up" (albeit by a cop, not a jail deputy), Dr. Yussman never made any representations about Nosewicz's chest pain or his alleged "reasonable beliefs." The only opinion as to causation that Dr. Yussman renders is that Nosewicz should stop smoking marijuana daily since it can "cause at minimum slow coronary bloc flow…." [Ex. E, p. 1]. Again, since Nosewicz's expert disclosures do not match Dr. Yussman's records, his disclosure should be struck in its entirety.

(d) Dr. Roy Theriot

Dr. Theriot, Nosewicz's dentist, did examine him following the encounter with Janosko, albeit more than a month after his release from custody.  As with some of the physicians, Dr. Theriot did note that Nosewicz reported suffering trauma, but he never reached any opinion that such alleged injury was caused by the incident in ACDF nor confirmed the nature or extent of such trauma.  Based upon Nosewicz's complaint, Dr. Theriot simply took an x-ray and noted that while an implant had shifted, the crown and accompanying screw appeared intact.[4]  [Ex. F, Theriot Dental Records].  Since Dr. Theriot never reached a causal opinion during treatment of Nosewicz's implant, as Plaintiff has tried to allege, his disclosure should be struck in its entirety.

As is hopefully evident, Nosewicz's assertions as to the opinions of the four non-specifically retained doctors is not in any way supported by the respective medical records and in some cases is directly contradicted.  Further, absolutely no basis for the alleged opinions is

[4] Dr. Theriot only retains handwritten records, which are admittedly difficult to read.  However, the date of relevant treatment, 1/8/15, is noted in the bottom right corner of the record.  Despite the difficulty in deciphering all the words, it is clear that Dr. Theriot never reached an opinion on causation. [Ex. F].  Furthermore, Dr. Theriot's evaluation is vastly different from Nosewicz's recollection, as Nosewicz claimed in deposition that the implant came out entirely.  [Ex. G, Plaintiff's Deposition, 495:8-500:12].  The inconsistency between Dr. Theriot and Nosewicz's recollection of treatment casts further doubt on the disclosure.

provided in either the disclosure or the referenced medical records.  For these reasons, the expert disclosure violates Fed. R. Civ. P. 26(a)(2)(C) and should be struck.

**B.    Plaintiff's non-retained medical experts should have been disclosed as specially retained experts, triggering additional Rule 26(a) obligations, which were not met**

While the Defendant recognizes treating physicians are often not considered to be retained experts, a physician called to testify beyond the scope of his treatment of the plaintiff is subject to the stricter disclosure obligations found under Fed. R. Civ. P. 26(a)(2)(B).  ***Scholl v. Pateder***, 2011 WL 2473284, at \*3 (D. Colo. June 22, 2011).  Such delineation between retained and non-retained physicians is necessary since the rule "focuses not on the status of the witness, but rather on the substance and/or scope of [his] testimony."  *Id*. (internal citations and quotations omitted).  All four of Plaintiff's non-retained expert disclosures go beyond the scope of each expert's role as a treating physician, as clearly shown by the lack of discussion and supporting information in their own records, thus making them improper under Rule 26(a)(2).

(a)    Dr. Mark Engelstad

Subparagraphs (b), (c), (d), and (e) of Dr. Engelstad's disclosure are completely outside the scope of his role as a treating physician because all four paragraphs provide a causal opinion on Nosewicz's alleged injuries and were never discussed or analyzed in his records.  For example, in subparagraph (b), Dr. Engelstad has been disclosed to provide his opinion that "[a]s a *direct result of the incident at the Adams County Jail* … [Plaintiff's] preexisting OCD and generalized anxiety disorder were triggered and aggravated…."  [Ex. B, p. 2 (emphasis added)].  When a doctor testifies about what caused an injury "[h]e is going beyond his personal involvement in the facts of the case and giving an opinion formed because of the lawsuit."  ***Scholl***, 2011 WL 2473284, at \*4 (internal citations and quotations omitted); ***see also Hermann***,

-8-

2012 WL 5569769 at *5 (striking non-retained expert disclosure of treating physician where physician opined on causation and prognosis of injuries).

While the Defendant recognizes that an exception may exist if the causal opinion was formed as a necessary part of treatment, *see id*., such exception does not apply with respect to Dr. Engelstad.  Not only did Dr. Engelstad never actually reach a causal opinion (see prior section on "bases" thereof), but such causal diagnosis would not be necessary to treat Nosewicz's OCD.  Further, there is no indication from the medical records or Nosewicz's expert disclosures that Dr. Engelstad was required to determine the exact causal nature of Nosewicz's OCD or that it altered or impacted any treatment, all of which was pre-existing.  Indeed, Plaintiff's expert disclosures indicate that he has been suffering from OCD since 2011, years before the incident at issue, which belies the assertion that any causal diagnosis was necessary to determining a course of treatment. [5]

Subparagraph (e) of Dr. Engelstad's report is unequivocally an expert opinion subject to Fed. R. Civ. P. 26(a)(2)(B) because it forecasts Plaintiff's alleged future prognosis.  A doctor's opinion of a future prognosis is outside the bounds of treatment, thus triggering the requirement for a written report.  *See Carbaugh*, 2014 WL 3543714, at *4.  For these reasons as well, Dr. Engelstad's disclosure should be struck.

(b)     Dr. Arif Rohilla

Dr. Rohilla is disclosed to testify, in part, that the cause of Plaintiff's alleged mild heart attack was due to the lack of oxygen and that his chest pain "could also have been caused by the

---

[5] There is also no reference in the records to show that Dr. Engelstad drew a connection between any worsening symptoms and the physical encounter in the jail, further belying that any causal opinion was necessary to treatment.

stress that resulted from his having been physically assaulted as he reported...." [Ex. B, p. 3]. As with Dr. Engelstad, the opinion allegedly provided by Dr. Rohilla relates to causation of injury and was not necessary to treat Plaintiff while he was hospitalized. There is nothing within Dr. Rohilla's reports to indicate that the *source* of Plaintiff's heart condition was even remotely relevant to treatment. Indeed, Plaintiff's use of the phrase "could also have been caused" in his disclosure raises speculation as to true source of his chest pain, which undermines any allegation that the cause of the chest pain was a necessary precursor to determining the proper course of treatment. Further, there is no link or explanation set forth in the medical records.

The second half of Dr. Rohilla's disclosure is even more objectionable. He is disclosed as providing an opinion that Plaintiff's "beliefs" as to having a heart attack in the jail and increased chest pain "would also have been reasonable under all the attending circumstances because when a person is being physically assaulted, the trauma of the assault causes his heart rate and blood pressure to increase...." Such opinions by Dr. Rohilla are utterly detached from his medical diagnosis and treatment of Plaintiff's heart condition and require speculation as to what Plaintiff "believed" while he was in custody. Whether Plaintiff's beliefs were "reasonable" while in jail has no bearing on medical treatment and falls outside the purview of the permissible expert opinions for a non-retained physician. *See Scholl*, 2011 WL 2473284, at *4 (limiting expert to "what he saw and did and why he did it.").

Because Plaintiff failed to provide a report for Dr. Rohilla, any opinions related to causation of injuries or Plaintiff's "reasonable beliefs" should be struck.

(c)      Dr. Martin Yussman

Much like Dr. Rohilla, Dr. Yussman has been disclosed to provide an opinion on the "reasonableness of Plaintiff's belief" that his chest pain originated from his heart and that the alleged use of force against him made the condition worse.  [Ex. B, p. 5].  Again, Plaintiff's alleged, self-serving beliefs from the night he was in jail are completely removed from Dr. Yussman's treatment of Plaintiff's heart condition.  Furthermore, whether such beliefs were "reasonable" is not within the purview of a treating physician and fall outside the scope of "what he saw and why he did it."  *Scholl*, 2011 WL 2473284, at *4.  Dr. Yussman's disclosure raises even greater skepticism because he treated Plaintiff on August 11, 2016, essentially nineteen months after Plaintiff was in custody.  It strains credibility to state that any opinion Dr. Yussman had of Plaintiff's "reasonable beliefs" was necessarily formed as part of a medical diagnosis a year and a half after the incident in question.

Subparagraph (c) of Dr. Yussman's expert disclosure is not so much an opinion as it is a hypothetical.  [Ex. B, p. 5].  It states that "*If* Plaintiff experienced increased chest pain … such pain would also have been reasonable under all the attending circumstances.…"  (emphasis added).  Again, the opinion amounts to rank speculation as to what Plaintiff felt or believed, which is not tethered to any medical diagnosis (especially a diagnosis two years after the incident).  *See Pioneer Centres Holding Co. v. Alerus Fin., N.A.*, 2015 WL 2065923, at *6 (D. Colo. May 1, 2015) (discussing impropriety of speculator opinions by expert witnesses).

Dr. Yussman's disclosure should be struck in its entirety. All of his opinions relate to Plaintiff's alleged beliefs and are based on pure speculation.  Nothing contained within the disclosure qualifies as an appropriate opinion for a non-retained expert physician.

(d) Dr. Roy Theriot

As with the other disclosures, Dr. Theriot's disclosure includes an opinion as to the cause of Nosewicz's loose tooth/implant.   [Ex. B, p. 6].  Not only is that opinion not contained in his medical records, such opinion was also not necessary for treatment of Mr. Nosewicz.  Given this deficiency, Dr. Theriot's disclosure as a non-retained expert was improper and should be struck.

## C.      Nosewicz violated the terms of the Scheduling Order

The parties mutually agreed to limit experts to three per side, which the Court adopted as part of the Scheduling Order.  [ECF 23, p. 6].  Nosewicz, however, then disclosed six experts without seeking prior leave from the Court or confering with the undersigned.  Moreover, the undersigned has been provided no good-faith basis, nor is one readily apparent,[6] for doubling the number of permitted experts, including experts outside of the anticipated fields of expert testimony.  [*See* ECF 23, p. 6, ¶ 1].  Given that Nosewicz's own treating doctors should have been readily known to him and his attorneys at the time of initial disclosures and the preparation of the Scheduling Order, there is no reasonable basis to allow them to unilaterally expand the number of experts after the fact.  In light of Nosewicz's failure to follow the scheduling order, at least three of Nosewicz's experts should be struck under Fed. R. Civ. P. 16(f) to ensure compliance with the Order, notwithstanding the other objections discussed above.

---

[6] While this issue was raised in Janosko's conferral letter, Plaintiff's only response was that the Scheduling Order is not an Order, but merely a "proposal."  Plaintiff failed to articulate any good faith basis for ignoring the Scheduling Order.  As far as the undersigned is aware, the Scheduling Order is binding on the parties absent a request for good cause to modify and approval by the Court, which never occurred here.  See Fed. R. Civ. P. 16(b).

**D.      Remedy sought**

Defendant recognizes that the Court has discretion in formulating appropriate remedies in the context of improper Rule 26 disclosures.  In this context, however, the appropriate remedy is to strike each of the four non-retained expert disclosures.    As shown above, Nosewicz's disclosures simply and unequivocally do not match the opinions listed in each of the respective doctor's records.  Many of the disclosed opinions are even diametrically opposed to the medical conclusions reached during treatment.  As such, the expert disclosure fails to meet the minimum requirements in Rule 26 including containing "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C)(ii).  The remaining content of the disclosures consists of speculative opinions on causation and "reasonable beliefs," none of which are proper for a non-retained expert (or even a retained expert).

The Court should consider the fact that Nosewicz's failure to make proper disclosures is neither justified nor harmless.  ***See Dedmon***, 2015 WL 1040521, at *5-6.  Nosewicz has obviously known the identity of his treating physicians since the inception of this suit, which means he had ample opportunity to seek out reports in accordance with Fed. R. Civ. P. 26(a)(2)(B), but failed to do so.  The prejudice to the Defendant is substantial, in that it is impossible to know what the treating physicians will actually testify to, since the Defendant cannot locate any of the bases of any of their opinions in their medical records.  Also prejudicing the Defendant is the fact that Nosewicz keeps altering their scope of the opinions.  In his conferral letter responding to Defendant's concerns about expert disclosures, Nosewicz indicated that he is calling these doctors to support his contention that he was a "thin skull" and "prone to extremely anxious behavior."   [Ex. A]. Yet those opinions are not contained in the expert

disclosures, nor can they be found in any of the medical records. Based upon the ever shifting and baseless nature of the disclosures, Nosewicz is essentially setting up trial by ambush for each of his non-retained experts which is expressly what Rule 26 is intended to prevent. *See, e.g., Reich v. Am. Family Mut. Ins. Co.*, 2015 WL 3619862, at *2 (D. Colo. June 9, 2015) (noting that goal of disclosure obligations is in part to avoid trial by ambush tactics).

There is similarly no ability to cure the deficiencies raised. Nosewicz could try to argue that Defendant has received the medical records and could depose all of the doctors disclosed, at a substantial cost. In making this assertion, Plaintiff would be ignoring that discovery cut off is scheduled to occur on March 17, 2017. Further, Plaintiff would also be ignoring that the Defendant has no ability to prepare for such depositions when the alleged opinions are not tethered to any records nor the information contained therein and the Defendant has no understanding as to the bases for the alleged opinions. Put another way, how can the Defendant properly cross-examine the opinions of each physician if he is deprived of the records and factual bases that allegedly support those opinions? No amount of delay or resetting of deadlines can cure this failure. *See Dedmon*, 2015 WL 1040521, at *7 (striking experts in part because further delay and depositions were insufficient and were unlikely to solve prejudice caused by disclosures).

In light of the gross deficiencies and blatant disregard for Rule 26 and this Court's Scheduling Order, no amount of extension or remediation will cure the issues. Thus, the Defendant asserts that all of the non-retained expert disclosures should be struck to avoid prejudice to the Defendant, as well as avoid potentially misleading testimony about the nature of Nosewicz's treatment.

-15-

WHEREFORE, the Defendant respectfully requests that the Court strike all four of Nosewicz's non-retained expert disclosures and preclude them from testifying at trial.

Respectfully submitted this 3rd day of March, 2017.

> *s/ Nicholas C. Poppe*
> Marni Nathan Kloster
> Nicholas C. Poppe
> NATHAN DUMM & MAYER P.C.
> 7900 E. Union Avenue, Suite 600
> Denver, CO  80237-2776
> Phone Number: (303) 691-3737
> Fax: (303) 757-5106
> mkloster@ndm-law.com
> npoppe@ndm-law.com
> *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2017, I electronically filed the foregoing **MOTION TO STRIKE PLAINTIFF'S NON-RETAINED EXPERT DISCLOSURES** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses:.

Brice A. Tondre, Esq.
215 South Wadsworth Blvd., #500
Lakewood, Colorado 80226
briceatondrepc@msn.com

John L. Springer
15394 E. Monmouth Place
Aurora, CO 80015
jlspringer01@aol.com

*s/ Lauren Pembo*
Lauren Pembo, Paralegal
