IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00447-PAB-KLM

EDWARD JOHN NOSEWICZ,

    Plaintiff,

v.

JEFFREY JANOSKO,

    Defendant.

## ORDER

This matter is before the Court on defendant's Motion and Brief in Support of Summary Judgment [Docket No. 39], Plaintiff's Motion for Summary Judgment on Issue of Liability [Docket No. 45], and defendant's Motion to Strike Affidavits of Plaintiff [ECF 44-1 & 42-1], Stephanie Chiu [ECF 44-6 & 42-2], and Tavi Wolf [ECF 44-2 & 42-3]. Docket No. 47. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

### A. Factual Background

On December 5, 2014, plaintiff Edward John Nosewicz was arrested by Thornton police officers. Docket No. 39, Defendant's Statement of Undisputed Material Fact ("DSUMF") 1; Docket No. 39 at 2, ¶ 1. During his arrest, the police officers slammed

---

[1] The following facts are undisputed by the relevant parties unless otherwise indicated.

plaintiff to the ground, injuring his face. DSUMF 2.[2] Plaintiff was first taken to the Thornton Police Station and later to the Adams County Detention Facility. Docket No. 45, Plaintiff's Statement of Undisputed Material Facts ("PSUMF") 2; Docket No. 45 at 3, ¶ 2. Plaintiff's claim relates to his treatment at the detention facility, not his arrest. *See* Docket No. 10.

Two members of the detention facility medical staff saw plaintiff during the intake process; he was then released into the general population and assigned a cell in the intake pod. DSUMF 3, 6, 7. Between 7:00 p.m. and 8:00 p.m. on December 5, 2014, plaintiff complained in an irate manner that he needed to see the medical staff. PSUMF 8. Defendant Jeffrey Janosko, a deputy sheriff assigned to the detention facility, spoke to plaintiff and contacted the medical unit. PSUMF 6, 8, 9; DSUMF 8. Sergeant Robert Hannah took plaintiff to the medical unit for evaluation. DSUMF 9. A nurse saw plaintiff and issued him an oxygen concentrator. DSUMF 10. Plaintiff told the medical staff that he needed medications. DSUMF 10.[3]

---

[2] Plaintiff purports to deny DSUMF 2 on the basis that it is not supported by the deposition testimony cited by defendant and that it is contradicted by plaintiff's affidavit. Docket No. 44, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("PRDSUMF") 2; Docket No. 44 at 6, ¶ 2. However, plaintiff's testimony supports DSUMF 2. Docket No. 39-2 at 3, 37:11-12 ("I was grabbed on the back and slammed flat down on my face.") and 40:14-15 ("Q: And you had [an] injury to your head? A: A little bit on my face. Scratches."). Plaintiff's affidavit is not to the contrary because it states that only one side of his face was uninjured, Docket No. 44-1 at 2, ¶¶ 3-4, and it would be unavailing even if it were. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). Thus, the Court deems DSUMF 2 admitted. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.F.3.b.iv.

[3] Although plaintiff's medical situation is not described in either party's statement of undisputed facts, plaintiff states that he has used portable oxygen and has taken medications since a heart attack in 2005. Docket No. 45 at 1-2.

At approximately 4:10 a.m. on December 6, 2014, plaintiff began yelling at the top of his lungs. DSUMF 14; PSUMF 14. Defendant went to plaintiff's cell and asked the tower deputy to open plaintiff's cell door so that plaintiff and defendant could better communicate. DSUMF 14; PSUMF 14. Defendant stood in front of the open door and spoke with plaintiff. DSUMF 16. Defendant offered to call the medical staff to ask if they would see him and told plaintiff that he could file a kite if they would not see him. *Id*.; *see also* PSUMF 16. Plaintiff became progressively angrier and began yelling at defendant. DSUMF 17. Because of plaintiff's irate behavior and because plaintiff would not obey defendant's commands, defendant decided that he needed escort plaintiff to a safer location. PSUMF 17; DSUMF 18.[4]

Defendant entered plaintiff's cell and a physical altercation ensued. DSUMF 20; PSUMF 19. The parties dispute the particulars of the altercation, but they agree that defendant forced plaintiff to the cell floor and that plaintiff's left elbow was lacerated. PSUMF 19, 20. At the time, plaintiff told defendant that he had broken plaintiff's ribs. PSUMF 22. Several other officers responded to the altercation and plaintiff was taken to a cool-down "PR Cell" in the intake pod. DSUMF 20, 21, 22. Approximately five minutes later, a nurse saw plaintiff. DSUMF 22. Plaintiff was escorted to the medical unit and a nurse treated plaintiff's elbow injury. DSUMF 24. The medical staff later saw plaintiff again and provided him with one of his medications. *Id*.

---

[4] Plaintiff purports to deny DSUMF 18 but offers no citation to any evidence in the record. PRDSUMF 18. Instead, plaintiff suggests defendant should have called medical. *Id*. The Court deems DSUMF 18 admitted. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.F.3.b.iv.

### B. Procedural History

On February 24, 2016, plaintiff filed his complaint. Docket No. 1. Plaintiff asserts a 42 U.S.C. § 1983 claim for use of excessive force in violation of the Fourth Amendment and deliberate indifference to plaintiff's serious medical needs in violation of the Fourteenth Amendment.[5] Docket No. 10 at 3, ¶ 14.

On March 29, 2017, defendant filed his motion for summary judgment, arguing that plaintiff cannot prove his claim and that defendant is entitled to qualified immunity. Docket No. 39 at 2, 13, 19. On April 21, 2017, plaintiff filed his partial motion for summary judgment, seeking judgment on the issue of liability for his excessive force claim. Docket No. 45 at 1. On May 3, 2017, defendant filed his motion to strike, seeking to strike three affidavits attached to plaintiff's response to defendant's motion for summary judgment. Docket No. 47 at 1-2.

## II. ANALYSIS

### A. Cross Motions for Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary

---

[5] While plaintiff asserts these two theories of liability in a single claim, for the sake of simplicity, the Court refers to them below as separate claims.

judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

Defendant asserts the defense of qualified immunity, under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Where a defendant asserts a qualified immunity defense, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008) (internal citation and quotation marks omitted). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

Defendant argues that he is entitled to qualified immunity because his actions

did not violate plaintiff's constitutional rights and because there was no clearly established law indicating that defendant violated plaintiff's rights. Docket No. 39 at 13, 19. A court can address the elements of qualified immunity in any order and need not address both elements if one is dispositive. *Pearson*, 555 U.S. at 236. Accordingly, the Court addresses whether a constitutional violation occurred in relation to plaintiff's deliberate indifference claim and whether there was clearly established law in relation to plaintiff's excessive force claim because those issues are dispositive.

### *1. Plaintiff's Deliberate Indifference Claim*

"Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment." *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). To bring a claim for deliberate indifference to medical needs against an individual, a plaintiff must allege: "(i) that he suffered from a serious medical need – that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it." *Ajaj v. Fed. Bureau of Prisons*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). A prisoner must therefore establish "that the defendant[] knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez v. Beggs*, 563

F.3d 1082, 1089 (10th Cir. 2009) (quotations omitted).

In his briefing, plaintiff makes little attempt to defend his deliberate indifference claim. In fact, defendant makes just one conclusory reference to defendant's "failure to call medical" in relation to his medical treatment. Docket No. 44 at 15. But defendant's failure to contact medical before entering plaintiff's cell is not enough to support a claim for deliberate indifference. Plaintiff must show that defendant prevented him "from receiving treatment or den[ied] him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211 (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Plaintiff admits that defendant offered to call the detention center's medical staff on his behalf and that he was seen by a nurse shortly thereafter. DSUMF 16, 22; PSUMF 16. Therefore, plaintiff has not shown that there is a genuine issue of material fact as to whether his constitutional right to adequate medical care was violated. The Court will enter summary judgment for defendant on plaintiff's Fourteenth Amendment claim.

### 2. *Plaintiff's Excessive Force Claim*

The Fourth Amendment applies to plaintiff's excessive force claim because he was arrested without a warrant and a probable cause hearing had not yet been held at the time of the altercation between the parties. *See Pierce v. Multnomah Cty., Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996) ("[T]he Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest."); *cf. Estate of Booker v. Gomez*, 745 F.3d 405, 420 (10th Cir. 2014) (holding that the Fourteenth Amendment applies to an excessive force claim

by a pretrial detainee arrested pursuant to a warrant).

Courts analyze whether the force used "violat[ed] an individual's Fourth Amendment rights under the 'objective reasonableness' standard." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)); *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The question is whether the officer's actions were objectively reasonable. *See Scott v. Harris*, 550 U.S. 372, 381 (2007). "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Buck*, 549 F.3d 1269, 1287-88 (quoting *Marquez*, 399 F.3d at 1220). "Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted). "Additionally, we have considered whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009) (citing *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)) (internal quotation marks omitted). A claim of excessive force requires some actual injury that is not de minimis. *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

When evaluating a claim of qualified immunity, "'clearly established law' should

not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Casey*, 509 F.3d at 1283-84 (quoting *Saucier*, 533 U.S. at 202); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).

That being said, factual novelty alone will not automatically provide a state official with the protections of qualified immunity. *See Casey*, 509 F.3d at 1284 (noting that in the Fourth Amendment context, "there will almost never be a previously published opinion involving exactly the same circumstances"); *Blake*, 469 F.3d at 914 ("[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks and alteration marks omitted)). The Tenth Circuit employs a "sliding scale" in identifying clearly established law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey*, 509 F.3d at 1284 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)); *see also White*, 137 S. Ct. at 552 ("*Garner* and *Graham*

do not by themselves create clearly established law outside 'an obvious case.'" (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004))).

Plaintiff cites three cases in arguing that defendant is not entitled to qualified immunity, *Estate of Booker*, 745 F.3d at 427, *Kingsley*, 135 S. Ct. at 2473, and *Morris v. Noe*, 672 F.3d 1185, 1188 (10th Cir. 2012). Docket No. 44 at 16-17; Docket No. 45 at 19-20. None of these cases demonstrates that plaintiff's excessive force claim was clearly established.

In *Estate of Booker*, a pretrial detainee elbowed a guard in the head while the guard was attempting to move him to a cell for uncooperative detainees. 745 F.3d at 412. Several guards then surrounded the prisoner, who did not resist. *Id*. at 414. The guards handcuffed the prisoner while he was on the ground; put the prisoner's neck in a hold designed to cause unconsciousness by cutting off the flow of blood to his brain; applied a pain compliance hold to his arms, almost 200 pounds of pressure to the prisoner's back with a knee, and a pain compliance device to his ankle; and shocked the prisoner with a Taser for longer than was recommended. *Id*. at 413-14, 427. The prisoner died of asphyxiation due to the officers' actions. *Id*. at 416.

The altercation between plaintiff and defendant here is disputed, but, for the purposes of resolving defendant's motion, the Court assumes that plaintiff's version of the altercation is accurate. *See Henderson, Inc.*, 41 F.3d at 569. The Court therefore assumes that defendant "slammed [plaintiff's] head into a cinderblock wall, hit him on the left side of his chest, fracturing one of his ribs, and caused his left elbow to be

11

lacerated when he collapsed to the floor." Docket No. 45 at 18.[6] While the altercation is similar to *Estate of Booker* in that there was an attempt to move a prisoner to a "cool down" cell, the amount of force used by defendant Janosko, who was alone in plaintiff's cell, is different in type and degree from the force used by the officers in *Estate of Booker*. A determination of excessive force where several officers simultaneously applied a variety of force to a non-resisting prisoner does not place the question of whether defendant used excessive force here "beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted).

The Court rejects plaintiff's argument that *Kingsley* shows defendant violated clearly established law for essentially the same reasons. As in *Estate of Booker*, while the prisoner was facedown and handcuffed, a group of officers placed weight on a prisoner's back with a knee and shocked him with a Taser. *Kingsley*, 135 S. Ct. at 2470. Additionally, the prisoner claimed the officers slammed his head into a concrete bunk while he was handcuffed. *Id*. A case holding that it is objectively unreasonable for prison guards to beat and shock a handcuffed prisoner is not "precedent close enough on point" to the situation here "to make the unlawfulness of [defendant's] actions apparent." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011); *see also Morris*, 672 F.3d at 1197 (finding a case involving force used against a subdued

---

[6] Defendant provided the surveillance video of the incident and the parties each submitted "enhanced" versions of the same, Docket Nos. 40, 50, but the videos do not conclusively support either party's version of the altercation. *Cf. Scott*, 550 U.S. at 380 (holding that in deciding a motion for summary judgment a court should not accept as true a version of facts "blatantly contradicted" by record video evidence). The videos show that, after defendant entered the cell, the parties switched positions such that plaintiff was in the doorway with defendant inside the cell. The parties then grappled with each other and defendant threw plaintiff to the ground, but it is not clear how.

prisoner "not particularly helpful" in evaluating actions taken by police officers during the "initial takedown").

The plaintiff's reference to *Morris* is also unavailing, but for different reasons. The plaintiff in *Morris* was backing toward police officers for help when the officers grabbed him from behind and threw him to the ground. *Morris*, 672 F.3d at 1190. The plaintiff "posed no threat" and did not "resist or flee." *Id*. at 1198. The situation and plaintiff's conduct here differs markedly from *Morris*, even if the amount of force used is similar. Plaintiff admits that, after defendant offered to contact the medical staff, plaintiff became increasingly irate and screamed at defendant. DSUMF 16, 17. Defendant's uncontradicted claim is that he entered plaintiff's cell intending to move plaintiff to another cell because of his irate behavior and because plaintiff refused to obey his commands. DSUMF 18. Such an action would be consistent with the detention center's training to escort an inmate to a "PR Cell" when the inmate is unable to calm down, both for the inmate's safety and for the safety of the whole pod. DSUMF 27. Further, plaintiff admits that officers must ensure the situation is safe before an inmate can be seen by the medical staff. DSUMF 28. In fact, when asked whether leaving plaintiff screaming in his cell would have been safe, plaintiff's expert testified that "it wouldn't be good to leave [plaintiff] in there screaming at the top of his lungs." Docket No. 39-12 at 5, 124:21-22. He further explained that, instead of being allowed to create a disturbance, a screaming prisoner should be "put in a quiet room" and that "you've got to use the appropriate amount of force when you do it, if he doesn't want to go." *Id*., 124:13, 124:23-25. Here, unlike in *Morris*, it was objectively reasonable for

13

defendant to view plaintiff as a threat to safety and plaintiff was actively resisting by refusing to obey defendant's lawful commands. DSUMF 18. Thus, *Morris* does not show that defendant's use of a similar amount of force to that which was applied in *Morris* was objectively unreasonable.

Having failed to identify a case where an officer acting under similar circumstances violated the Fourth Amendment, *Pauly*, 137 S. Ct. at 552, plaintiff must turn to the sliding scale approach. Plaintiff argues that there could not be a "clearer constitutional violation than to savagely beat an inmate who is crying out for medical care." Docket No. 44 at 16. The Court, however, finds that the three *Graham* factors do not point strongly to a conclusion that defendant's Fourth Amendment rights were violated. While plaintiff's conduct was not a "severe[]" crime, it did "pose[] an immediate threat to the safety" of defendant and the others in the cellblock. *Graham*, 490 U.S. at 396. Defendant offered to help plaintiff seek medical care and sought to move plaintiff to a different cell for safety reasons. DSUMF 16; PSUMF 16. But plaintiff "actively resist[ed]" defendant's attempt to move plaintiff to a different cell. *Graham*, 490 U.S. at 396. As plaintiff admits, defendant was authorized to use compliance holds to move a resistant or disruptive prisoner. DSUMF 30 ("If an inmate is engaging in passive or aggressive resistance, such as [plaintiff's] failure to follow lawful commands, a deputy may use a series of 'control and compliance holds,' which involve physical contact, but are designed to gain control of the inmate and/or escort him to another location." (citations omitted)). While grappling with plaintiff alone in a prison cell, defendant struck plaintiff and threw plaintiff to the ground, at which time plaintiff hit his head on the cell

14

wall and cut his elbow. PSUMF 19, 20. Such actions are not "obviously egregious . . . conduct in light of prevailing constitutional principles," which allow for objectively reasonable use of force to ensure safety. *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). Therefore, the Court finds that plaintiff has not met his burden to show that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey*, 509 F.3d at 1283-84 (internal quotation marks omitted). The Court will grant defendant's motion for summary judgment on the basis of qualified immunity.

### B. Motions to Strike

Because the Court does not rely on any undisputed facts supported by the challenged affidavits, the Court will deny defendant's motions to strike them as moot.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion and Brief in Support of Summary Judgment [Docket No. 39] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment on Issue of Liability [Docket No. 45] is **DENIED**. It is further

**ORDERED** that defendant's Motion to Strike Affidavits of Plaintiff [ECF 44-1 & 42-1], Stephanie Chiu [ECF 44-6 & 42-2], and Tavi Wolf [ECF 44-2 & 42-3] [Docket No. 47] is **DENIED** as moot. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have his costs by filing a Bill of Costs with the Clerk of the Court. It is further

15

**ORDERED** that this case is closed.

DATED March 5, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge