IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-00447-PAB-KLM

EDWARD JOHN NOSEWICZ,

    Plaintiff,

v.

JEFFREY JANOSKO,

    Defendant.
_____

## ORDER
_____

This matter comes before the Court on Defendant's 702 Motion Challenging Dan Montgomery [Docket No. 71]. This case is set for a five-day jury trial beginning on October 7, 2019. Docket No. 96. Plaintiff Edward John Nosewicz alleges that, while he was in custody at the Adams County Detention Facility on December 6, 2014, defendant Jeffrey Janosko, a deputy sheriff with the Adams County Sheriff's Department, used excessive force against him in violation of the Fourth Amendment. Docket No. 59 at 2-3.

## I. BACKGROUND

On December 5, 2014, plaintiff Edward John Nosewicz was arrested by Thornton police officers. Docket No. 39 at 2, ¶ 1.[1] After his arrest, plaintiff was taken to the Adams County Detention Facility. Docket No. 45 at 3, ¶ 2. Two members of the jail's

---

[1] These background facts are drawn from undisputed facts in the parties' summary judgment briefing and are provided to give context to the expert's proposed testimony. *See* Docket Nos. 39, 45.

medical staff saw plaintiff during the intake process. Docket No. 39 at 2, ¶ 6. That evening, plaintiff complained in an irate manner that he needed to see the medical staff again. Docket No. 45 at 4, ¶ 8. Defendant, who was assigned to the jail, contacted the medical unit, and plaintiff was taken to the medical unit for evaluation. *Id*., ¶¶ 9, 12.

At approximately 4:10 a.m. on December 6, 2014, plaintiff, while in a cell, began yelling at the top of his lungs. Docket No. 39 at 3-4, ¶ 14; Docket No. 45 at 5, ¶ 14. Defendant went to plaintiff's cell and asked the tower deputy to open plaintiff's cell door so that plaintiff and defendant could better communicate. *Id*. Defendant stood in front of the open door and spoke with plaintiff. Docket No. 39 at 4, ¶ 16. Defendant offered to call the medical staff to ask if they would see plaintiff and told plaintiff that he could file a kite if they would not see him. *Id*.; *see also* Docket No. 45 at 5, ¶ 16. Plaintiff became progressively angrier and began yelling at defendant. Docket No. 39 at 4, ¶ 17. Because of plaintiff's irate behavior and because plaintiff would not obey defendant's commands, defendant decided that he needed to escort plaintiff to a safer location. Docket No. 45 at 5, ¶ 17; Docket No. 39 at 4, ¶ 18. Defendant entered plaintiff's cell and a physical altercation ensued. Docket No. 39 at 4, ¶ 20; Docket No. 45 at 5, ¶ 19. The parties dispute the particulars of the altercation, but they agree that defendant forced plaintiff to the cell floor and that plaintiff's left elbow was lacerated. Docket No. 45 at 5, ¶¶ 19, 20. Plaintiff subsequently filed this lawsuit. Docket No. 1.

## II. LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Instead, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the Court must assess whether the specific proffered opinions are reliable. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 thus imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). To perform this role, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). In assessing reliability, "the court may consider several nondispositive factors: (1) whether the proferred theory can and has been tested; (2)

3

whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990. These factors are not applicable in every case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 150-53 (1999). Indeed, the trial court has "the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Id.* at 152. Regardless of the specific factors applied, however, the objective of *Daubert*'s gatekeeping requirement remains the same: to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

Although the proponent of the challenged testimony has the burden of establishing admissibility, *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001)), the reliability standard does not require proof "that the opinion is objectively correct, but only that the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (internal citation omitted).

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert

4

testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal quotation marks and citations omitted). In assessing whether expert testimony will assist the trier of fact, the Court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

### III. ANALYSIS

Plaintiff has designated Dan Montgomery as an expert on "modern police practice regarding use of force." Docket No. 73 at 1. This Court's practice standards require a motion objecting to the admissibility of opinion testimony of an expert witness to "identify with specificity each **opinion** the moving party seeks to exclude" and to "identify the specific ground(s) on which each opinion is challenged." *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, III.G. Much of defendant's motion, however, fails to provide the necessary "specificity" as to which opinions he is challenging and on what grounds. *See, e.g.*, Docket No. 71 at 2 (indicating that defendant "moves to strike *all* of Mr. Montgomery's opinions"). As the court explained in *Crabbe*, "the Rule 702 determination [is] more *opinion-centric* than *expert-centric*." 556 F. Supp. 2d at 1221. The Court will therefore focus narrowly on the following five opinions from Mr. Montgomery's expert report that defendant challenges with specificity:

    1. "When [plaintiff] was expressing his concerns at 4:10 a.m. about being in need of medical attention, even perhaps in a relatively obstreperous

manner, it was [defendant's] job to relay that information to the nurse's station." Docket No. 71-2 at 12, ¶ 1.

2. "[Plaintiff's] actions . . . would not have justified [defendant], under the provisions of [Colo. Rev. Stat.] § 18-1-704(1), to use force to defend himself from what he reasonably believed to be a physical attack." *Id*. at 14, ¶ 11.

3. "The use of physical force in this situation was not what a reasonably-trained deputy or police officer would have done given the same circumstances, and was not in concert with well-established and modern police practices and standards." *Id*. at 15, ¶ 12.

4. "If [defendant's] intent was truly to maintain order due to [plaintiff's] verbalizations, he should have simply gotten backup assistance, conducted a swarm technique for the safety of everyone concerned, and escorted [plaintiff] to a quiet room." *Id*. at 15-16, ¶ 13.

5. "[Defendant] in my opinion, based on the evidence in this case, lost perspective, became emotionally captured, and over-reacted." *Id*.

As a general objection to each of these opinions, defendant argues that Mr. Montgomery lacks any relevant experience in how jails operate or when and how officers should use force in a jail setting. *Id*. at 2-3. As to the specific opinions identified above, defendant argues that: (1) Montgomery has no expertise in when and how inmates should receive medical treatment, *id*. at 5-6; (2) Montgomery may not testify about his legal conclusions as to whether or not defendant's conduct was justified, *id*. at 12-15; (3) Montgomery fails to reliably apply any standards to reach his conclusion regarding defendant's use of physical force, *id*. at 2-11; (4) Montgomery fails to apply any standards to reach his conclusion that defendant should have gotten backup assistance and used a "swarm" technique to deal with plaintiff, *id*. at 6-8; and (5) Montgomery's opinion about defendant's state of mind is not grounded in any facts. *Id*. at 12.

6

### A. Qualifications and Reliability

Defendant argues that Mr. Montgomery lacks the requisite qualifications to opine on how defendant should have reacted, what defendant should have done, and the reasonableness of his use of force because Mr. Montgomery has no experience in a jail setting. Docket No. 71 at 2-3. Plaintiff's somewhat cursory response indicates that Mr. Montgomery is "designated to testify to well established modern police practice regarding use of force," and will only be asked to testify to the "objective unreasonableness of [d]efendant's conduct." Docket No. 73.

Neither party has provided the Court with Mr. Montgomery's resume or curriculum vitae. Defendant has, however, attached Mr. Montgomery's expert report. Docket No. 71-2. That report indicates that Mr. Montgomery spent forty-seven years as a police officer in various positions, as well as at least seven additional years as a police consultant. *Id*. at 3. There is little doubt that Mr. Montgomery has extensive experience on many aspects of policing. The question here is whether his expertise extends to a jail setting, such as the one involved in this case. Defendant focuses on this issue by noting that, before 1972, Mr. Montgomery had between "two and three weeks experience" working as a jail deputy "to learn basically how it functions," Docket No. 71-1 at 4; had "oversight responsibility" as a police captain over holding cells when he worked in Lakewood, Colorado in the late 1970s and early 1980s, *id*. at 3; and, during his twenty-five year tenure as chief of the Westminster Police Department, was "accountable" for the jail but did not have oversight or "primary responsibility" for the jail. *Id*. Defendant claims that Mr. Montgomery's report is not based on any literature

7

related directly to jail operations. Docket No. 71 at 3. Although Mr. Montgomery lists twenty "legal and professional sources and organizations" that inform his opinions, none of those sources appear to involve jail settings. Docket No. 71-2 at 3.

### 1. Need to Notify Nurse's Station

Defendant first objects to Mr. Montgomery's opinion that defendant should have notified the nurse's station:

> When Mr. Nosewicz was expressing his concerns at 4:10 am about being in need of medical attention, even perhaps in a relatively obstreperous manner, it was Deputy [Janosko]'s job to relay that information to the nurse's station. This was perhaps a medical emergency in progress and it was not Deputy Janosko's job to enter the cell and perform a medical assessment as he did that Mr. Nosewicz was not sweating profusely as he had stated. It was Deputy Janosko's job to notify the nurse's station and he failed to do so. Instead, he entered the cell and almost immediately went hands on with Mr. Nosewicz as illustrated by the video of this incident.

Docket No. 71-2 at 12.

> Deputy Janosko indicated in his deposition, in response to the question, "Why didn't you call medical," the following: "Because Mr. Nosewicz wouldn't calm down enough. He was so irate and creating a disturbance within the unit that I didn't have a chance to return to my desk where the phone was to call medical." *(Janosko deposition @ 19).* This statement makes no sense. Again, all Deputy Janosko had to do at that point was to leave Mr. Nosewicz in the cell and return to his desk. In saying he did not have a chance, he simply affirmed his choice to purposely not take the time, but rather, to go hands on by himself.

*Id.* at 13.

Where an expert relies on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702,

8

advisory committee notes). The Court finds that plaintiff has not carried his burden as the proponent of the expert to show that Mr. Montgomery has the requisite experience to opine on an officer's duties in a jail setting to report an inmate's medical complaints to medical personnel without first doing a preliminary investigation of some type. Mr. Montgomery identifies no foundation for his opinions that "it was not [defendant's] job to enter the cell and perform a medical assessment" and it was "[defendant's] job to notify the nurse's station." *See* Docket No. 71-2 at 12. As defendant points out, Mr. Montgomery's experience in jail operations is extremely limited and occurred over forty-seven years ago. Moreover, the context of Mr. Montgomery's opinion is closely tied to a jail setting. Plaintiff was in a cell at the time he began yelling. *See* Docket No. 39 at 3-4, ¶ 14; Docket No. 45 at 5, ¶ 14. Mr. Montgomery provides no discussion about the availability of medical personnel at the jail at that hour, how long it would have taken the medical personnel that were available to respond if called, where the nurse's station was located relative to plaintiff's cell, the fact that defendant had notified the medical staff earlier in the evening about plaintiff's complaints and that plaintiff was taken to the medical unit, and what could occur within that area of the jail by delaying an interaction with plaintiff while medical personnel were called. Mr. Montgomery does not discuss the uncontested fact that defendant, before entering plaintiff's cell, offered to call the medical staff to ask if they would see him. *See* Docket No. 39 at 4, ¶ 16; Docket No. 45 at 5, ¶ 16. Mr. Montgomery also does not discuss what standards govern or inform how officers should respond to detainees' verbal requests for medical attention and how officers should deal with loud, angry detainees in a jail setting. Mr. Montgomery's opinion therefore lacks the "necessary connection" between his experience and the

conclusion reached. *See Medina-Copete*, 757 F.3d at 1104. In short, Mr. Montgomery offers nothing more than an assertion without explanation or proof. *See Kumho Tire*, 526 U.S. at 157 (courts are not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Because plaintiff has failed to demonstrate that Mr. Montgomery is qualified under Rule 702 to state opinions regarding whether defendant should have contacted the nurse's station regarding plaintiff's medical complaints and has failed to explain how Mr. Montgomery's experience informs his opinions or otherwise demonstrates that Mr. Montgomery's proposed testimony is the product of reliable principles and methods, Mr. Montgomery's testimony on this subject will be prohibited.

### 2. Reliable Application of Standards

As to opinions 3, 4, and 5, defendant argues that Mr. Montgomery does not reliably apply standards in reaching his conclusions.

"Despite the flexibility granted to district courts" in exercising the gatekeeping role, "the text of Rule 702 requires that [courts] ensure that proffered expert testimony be 'based on sufficient facts or data' and 'the product of reliable principles and methods.'" *Medina-Copete*, 757 F.3d at 1103 (quoting Fed. R. Evid. 702(b) and (c)). Mr. Montgomery's expert report lists twenty "legal and professional sources and organizations" from which he derives "[w]ell-accepted and modern police practices and standards." Docket No. 71-2 at 3. The report does not explain which "practices and standards" are drawn from which source. The report also includes eight pages of excerpts and summaries of sources selected by Mr. Montgomery. *Id*. at 4-11. Nowhere

in the report does Mr. Montgomery synthesize these diverse sources to provide a defined set of "practices and standards" that apply in a jail setting or that, while not derived from jail settings, would nevertheless apply to the confrontation in this case. For example, Mr. Montgomery's opinion about specific tactics defendant should have used to "maintain order" is not connected to any of the dozens of sources he mentions in the report. *Id*. at 15-16, ¶ 13. Mr. Montgomery specifically mentions a "swarm technique" that defendant could have used, but he does not explain which standard or standards he applied to reach that conclusion or any experience he has in using a "swarm technique" in a jail. *Id*. Mr. Montgomery also fails to explain how the "practices and standards" informed his conclusion that defendant "lost perspective, became emotionally captured, and over-reacted." *Id*. While the concept of "emotional capture" may have general applicability to one-on-one encounters between officers and persons acting the way plaintiff was acting, Mr. Montgomery does not explain that or otherwise explain why his conclusion should apply in a jail setting. Instead, he offers only his own ipse dixit.

Mr. Montgomery's third opinion states that "[t]he use of physical force in this situation was not what a reasonably-trained deputy or police officer would have done given the same circumstances, and was not in concert with well-established and modern police practices and standards." *Id*. at 15, ¶ 12. However, Mr. Montgomery's opinion fails to take into account any differences between dealing with a disruptive individual in a public setting versus an individual who is confined within a jail, such as the presence of other inmates and the availability of additional personnel. His opinion also does not identify any specific standards he applied. While he criticizes defendant's

11

decision to take plaintiff "to the ground using an arm bar," Docket No. 71-2 at 13, Mr. Montgomery does so by saying that defendant's explanation "makes no sense," as opposed to comparing defendant's explanation to a standard and determining whether defendant met that standard.

Plaintiff's response to defendant's Rule 702 motion sheds no light on how Mr. Montgomery reached his conclusions or why his conclusions reflect a reliable application of standards, as Rule 702 requires. *See* Docket No. 73 at 2-3. Although Mr. Montgomery states that his report is based on applying "methods and principles reliably to the facts of this case," *see* Docket No. 71-2 at 12, this assertion is conclusory and does not persuade the Court that Mr. Montgomery's opinions are admissible. *See Kumho Tire*, 526 U.S. at 157. The Court concludes that plaintiff has failed to demonstrate that Mr. Montgomery has explained how his experience in policing leads him to his conclusions, why his experience is a sufficient basis to draw such conclusions in a jail setting, and how his experience was reasonably applied to these facts, *Medina-Copete*, 757 F.3d at 1104, or otherwise reliably applies standards in reaching his conclusions. Accordingly, Mr. Montgomery will not be allowed to testify at trial regarding opinions 3, 4, and 5.

### B.   Relevance and Ultimate Issue Testimony

Defendant moves to exclude opinion 2 – that Colo. Rev. Stat. § 18-1-704(1), which governs when a person is justified in using physical force to defend himself, does not justify defendant's actions – on the grounds that this opinion is an improper legal conclusion and that it is irrelevant to the Fourth Amendment inquiry that plaintiff's claim

requires. Docket No. 71 at 12-13. Plaintiff makes no attempt to justify Mr. Montgomery's opinion. Docket No. 73 at 3.

Even assuming that Mr. Montgomery's opinion is not an improper legal conclusion, the Court finds that it is irrelevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, evidence regarding whether or not a state-law criminal statute justifies defendant's actions has no bearing on plaintiff's claim, which is whether defendant's actions constituted excessive force in violation of the Fourth Amendment. Indeed, it is more likely that Mr. Montgomery's opinion will confuse the fact-finder about what law applies to the case. Accordingly, this opinion is inadmissible, and Mr. Montgomery may not express any opinion at trial about whether defendant's conduct did or did not comply with Colo. Rev. Stat. § 18-1-704(1).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's 702 Motion Challenging Dan Montgomery [Docket No. 71] is **GRANTED** in part and **DENIED** in part as stated in this order.

DATED March 31, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge